BILL MAYES AND WIFE, ELIZABETH MAYES AND CAMP DEERWOODE, INC. v. JACK TABOR AND WIFE, JOYCE TABOR

No. 8429SC1230

(Filed 1 October 1985)

1. **Nuisance §§ 1, 7— hog farm—injunctive relief—balancing of utility and harm required**

   The trial court erred in an action to enjoin a hog farming operation as a nuisance by concluding that the hog farm was operated without negligence in an agricultural area and denying injunctive relief without balancing the utility of the defendants' conduct against the gravity of harm to plaintiffs.

2. **Nuisance § 1.1; Agriculture § 8— hog farm—action not based on changed conditions and locality**

   The trial court did not err in an action to enjoin a hog farming operation as a nuisance by denying defendants' motion for summary judgment, which was based on the statutory provision that an agricultural operation which was not a nuisance when it began cannot become a nuisance due to changed conditions in the locality after it has been in operation for more than one year. Plaintiffs' nuisance action was not based on changed circumstances in the locality; their summer camp has been in existence for sixty years. G.S. 106-700, G.S. 106-701.

APPEAL by plaintiffs from *William H. Freeman, Judge.* Order entered 7 September 1984 in Superior Court, TRANSYLVANIA County. Heard in the Court of Appeals 17 May 1985.

*Ramsey, Hill, Smart, Ramsey & Pratt, P.A., by Michael K. Pratt, for plaintiffs appellants.*

*Potts & Chitwood, by Jack H. Potts, for defendant appellees.*

BECTON, Judge.

This appeal involves a nuisance action to enjoin a hog-farming operation.

Camp Deerwoode, a private summer camp for boys, has been in operation near Brevard for approximately sixty years. The present owners, Bill Mayes and his wife, Elizabeth Mayes, purchased the 166-acre camp nineteen years ago. The defendants, Jack Tabor and his wife, Joyce Tabor, purchased the adjoining eighty to eighty-five acre tract about fifteen years ago. There, the Tabors began raising hogs.

In November 1982, the Mayeses filed a nuisance action against the Tabors, alleging that the Tabors were confining three hundred to five hundred hogs in unsuitable sheds within ten feet of the Mayeses' property line; that the stench from the hogs created "an immediate, substantial and unreasonable harm" to the use and enjoyment of their land; and that the hog operation constituted a nuisance. The Mayeses asked the trial court for temporary and permanent injunctive relief as well as compensatory damages. The Tabors filed an answer and a motion for summary judgment, based on N.C. Gen. Stat. Secs. 106-700 and -701 (Supp. 1983).

The trial court granted a preliminary injunction, requiring the Tabors to move their hog operation one hundred feet farther from the Mayeses' property line during the summer months. In March 1984, the trial court modified the preliminary injunction to eliminate the previously-ordered summer move in anticipation of a June 1984 hearing. In June 1984 the trial court denied the Tabors' motion for summary judgment. After a hearing on the merits in July 1984, the trial court, in a 7 September 1984 order, denied the Mayeses permanent injunctive relief. The Mayeses appeal.

The Mayeses assign error to the denial of injunctive relief, the language of the signed order, and the sufficiency of the evidence to support the finding of fact regarding the operation of the hog farm. The Tabors cross-assign error to the denial of their motion for summary judgment. In the 7 September 1984 order, the trial court applied incorrect criteria in denying injunctive relief. We therefore reverse in part and remand the matter to the trial court for further proceedings consistent with this decision. Otherwise, we find no error.

I

[1] In its September 1984 order the trial court found, in pertinent part:

4. That the [hog farm] operation is properly maintained and run and is not negligently operated.

and concluded:

1. That the Defendants' operation constitutes a nuisance to the plaintiff.

2. That the uses to which the Defendant is subjecting his land is not unreasonable.

3. That balancing the surrounding areas and the manner and condition of the hog farm, it does not constitute an abatable nuisance.

4. That the request for injunctive relief by the Plaintiff, be and the same is hereby dismissed.

A private nuisance action may arise from the defendant's intentional and unreasonable conduct or it may be grounded in negligence. *Pendergrast v. Aiken,* 293 N.C. 201, 236 S.E. 2d 787 (1977); Restatement (Second) of Torts Sec. 822 (1979); *see* Prosser and Keeton on the Law of Torts Sec. 87, at 622-23 (W. Keeton 5th ed. 1984) (elements of intentional nuisance). Here, the trial court eliminated the negligence theory with its fourth finding of fact. Since we find sufficient evidence to support this finding, it is conclusive on appeal. Therefore, we must apply the law of intentional private nuisance in evaluating plaintiffs' claim for injunctive relief.

Mayes v. Tabor

The degree of unreasonableness of the defendants' conduct determines whether damages or permanent injunctive relief is the appropriate remedy for an intentional private nuisance. Unreasonable interference with another's use and enjoyment of land is grounds for damages. *Pendergrast v. Aiken; see Kent v. Humphries*, 303 N.C. 675, 281 S.E. 2d 43 (1981). To award damages, the defendant's conduct, in and of itself, need not be unreasonable. Prosser, *supra*, Sec. 87, at 623. In contrast, injunctive relief requires proof that the defendant's conduct itself is unreasonable; the gravity of the harm to the plaintiff must outweigh the utility of the conduct of the defendant. *Pendergrast v. Aiken.* "[I]t is necessary to show that defendant's conduct in carrying on the activity at the place and at the time the injunction is sought is unreasonable." Prosser, *supra*, Sec. 88A, at 631 (footnote omitted). The *Pendergrast* Court set forth the criteria for injunctive relief:

> Reasonableness is a question of fact to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the conduct of the defendant. . . . Determination of the gravity of the harm involves consideration of the extent and character of the harm to the plaintiff, the social value which the law attaches to the type of use which is invaded, the suitability of the locality for that use, the burden on plaintiff to minimize the harm, and other relevant considerations arising upon the evidence. Determination of the utility of the conduct of the defendant involves consideration of the purpose of the defendant's conduct, the social value which the law attaches to that purpose, the suitability of the locality for the use defendant makes of the property, and other relevant considerations arising upon the evidence.

293 N.C. at 217, 236 S.E. 2d at 797 (citations omitted); *see also* Prosser, *supra*, Sec. 89, at 640-41.

Reviewing the trial court's conclusions of law, we note that the court failed to apply the *Pendergrast* criteria. It is not enough simply to conclude, as did the trial court, that the Tabors nonnegligently operated their hog farm in an agricultural area. *Pendergrast* requires the trial court to balance the utility of the Tabors' conduct against the gravity of the harm to the Mayeses.

The trial court, therefore, erred in denying the Mayeses injunctive relief.

## II

[2]  We turn to the Tabors' cross-assignment of error. The Tabors contend that they were entitled to summary judgment, based on G.S. Secs. 106-700 and -701. We disagree. Neither the policy reasons stated in G.S. Sec. 106-700 nor the language of G.S. Sec. 106-701 supports the Tabors' argument. Under G.S. Sec. 106-701, an agricultural operation that was not a nuisance when it began cannot become a nuisance due to "changed conditions in or about the locality thereof after the same has been in operation for more than one year . . . ." The Mayeses' nuisance action is not based on "changed circumstances in or about the locality" as this phrase is intended by the statute. This is not a case in which the non-agricultural use extended into an agricultural area. Camp Deerwoode has been in existence for sixty years.

## III

In light of the holding in I, *supra*, we need not address the Mayeses' remaining assignment of error.

In summary, we reverse in part and remand this case to the trial court for a determination of the propriety of injunctive relief.

Reversed in part and remanded.

Judges PHILLIPS and EAGLES concur.