ANDREW BROADBENT and REBECCA BROADBENT, Plaintiffs,
v.
KENNETH T. ALLISON, WILLIE T. ALLISON and wife, PATRICIA M. ALLISON, TRANSYLVANIA COUNTY AIRPORT, L.L.C., Defendants.
No. COA07-1342
Court of Appeals of North Carolina
Filed October 21, 2008
This case not for publication
James M. Kimzey for plaintiff-appellees.
Long, Parker, Warren & Jones, P.A., by Steve Warren, for defendant-appellants.
STROUD, Judge.
Defendants Kenneth Allison, Willie Allison, Patricia Allison, and the Transylvania County Airport, L.L.C., appeal from the order holding them in contempt of court for willfully violating the trial court's temporary injunction. The dispositive question is whether the language in the temporary injunction was sufficiently clear to provide the trial court with a basis for holding defendants in contempt of court. Because we conclude that the temporary injunction was not sufficiently clear, we vacate.

I. Factual Background
The background facts in the instant case were set forth by this Court on a previous appeal in this matter:
Plaintiffs purchased fifty-eight acres of land in rural Transylvania County in April of 1994. In May of 1996, plaintiffs moved into the house they had constructed on the property. Defendants purchased an adjacent property in December of 1995, which was being used as farmland. After plaintiffs had moved into their house they learned that defendants intended to construct an airstrip. In August of 1998, plaintiffs learned that the airstrip was going to be used for commercial purposes. Aircraft began using the airport in September of 1998.
Plaintiffs discussed the airport with defendants soon after it opened, voicing concern that planes were flying low over their house, barn, and riding ring. Flights continued over plaintiffs' property. By the time of trial, two planes had crashed on plaintiffs' property, resulting in one death and several serious injuries to occupants of the planes.
On 9 May 2001, plaintiffs filed suit alleging nuisance, and requesting compensatory and punitive damages, as well as injunctive relief. Following a jury trial at the 21 January 2003 session of Transylvania County Superior Court on the issues of liability and damages, the jury determined that the airport constituted a nuisance, and awarded plaintiffs $358,000.00 in compensatory damages. The jury rejected plaintiffs' claim for punitive damages. Following a 1 July 2003 hearing in front of Judge Guice, plaintiffs' request for a permanent injunction was denied, and defendants were granted an avigation easement permitting continued operation of the airport by defendants. Defendants filed motions for judgment notwithstanding the verdict and for a new trial, which were denied by order entered 29 July 2004.
Broadbent v. Allison, 176 N.C. App. 359, 362, 626 S.E.2d 758, 761-62 (2006), disc. review denied, 361 N.C. 350, 644 S.E.2d 4 (2007). After hearing the appeal, this Court affirm[ed] the verdict of the jury finding the operation of defendants' airport constituted a private nuisance. [It] reverse[d] and remand[ed] for a new trial on damages. . . [,] vacate[d] the judgment of the trial court denying plaintiffs' motion for a permanent injunction and granting defendants an avigation easement, and remand[ed] for a new hearing on [those] issues.` 176 N.C. App. at 361-62, 626 S.E.2d at 761.
On remand, plaintiffs moved for a temporary injunction. A copy of this motion was not included in the record, but we assume it exists because it is referenced in the trial court's order granting the motion in part. On 6 August 2007 the trial court granted the motion in part, enjoining defendants (1) "from allowing any airplane to take off or land between one-half hour before sunset until one-half hour after sunrise[,]" and (2) "from allowing any person who is not fully licensed to take off or land from the airport and from operating any flight school."
Plaintiffs filed a motion 17 August 2007 requesting that defendants be held in contempt for intentionally violating the injunction. Plaintiffs' motion alleged, inter alia, that defendants permitted unlicensed pilots to train and fly in and out of the Transylvania County Airport ("the airport") on 15 and 16 August 2007. Plaintiffs attached a sworn affidavit to their motion asserting that on 16 August 2007 plaintiff Andrew Broadbent ("Mr. Broadbent") contacted the airport manager, Mr. Randy Bagby, after witnessing a helicopter make repeated take-offs and landings at the Transylvania County Airport. The affidavit further asserted that "Mr. Bagby informed [Mr. Broadbent] that the helicopter was a training helicopter from another airport which usually operates with an unlicensed pilot accompanied by a licensed pilot with the unlicensed pilot making practice take-offs and landings[.]" Defendants countered with a sworn affidavit from Randy Bagby which stated that "[w]ithin that helicopter was a fully licensed student pilot, and a fully licensed flight [i]nstructor."
On 4 September 2007 the trial court entered an order finding that defendants "willfully violated" the injunctive order "by permitting a student pilot, not otherwise fully licensed to make repeated practice landings and take-offs from the Transylvania County Airport . . . on August 16, 2007 and refus[ing] to stop said prohibited flights[.]" Defendants were ordered to pay a fifty dollar ($50.00) fine to the Clerk of Court of Transylvania County within ten days. Defendants appeal.

II. Standard of Review
The first step to reviewing a contempt order is to determine if it should be classified as civil or criminal. O'Briant v. O'Briant, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985). Criminal contempt proceedings other than direct criminal contempt[1] require constitutional safeguards not necessary in a civil contempt proceeding. Int'l Union v. Bagwell, 512 U.S. 821, 826, 129 L. Ed. 2d 642, 651 (1994). In the case sub judice, the order does not specify, so we must look to the purpose of the order. O'Briant, 313 N.C. at 434, 329 S.E.2d at 372.
Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice. Civil contempt is a term applied where the proceeding is had to preserve the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties.
Id. In distinguishing between civil and criminal contempt, the United States Supreme Court has opined that "a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." Int'l Union, 512 U.S. at 829, 129 L. Ed. 2d at 653 (citation and internal quotation marks omitted).
There is no indication sub judice that defendants had any "subsequent opportunity to reduce or avoid the fine through compliance." Id. Therefore we conclude that the proceeding was for criminal contempt. Furthermore, the alleged contempt was not direct criminal contempt which occurred in the presence of the trial court, so certain constitutional safeguards were required. Int'l Union, 512 U.S. at 826, 129 L. Ed. 2d at 651.
In indirect criminal contempt proceedings, the trial judge must make findings of fact beyond a reasonable doubt, and enter a written order. N.C. Gen. Stat. § 5A-15(f) (2007). In general, "[o]n appellate review of a contempt order, the trial judge's findings of fact are conclusive when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency." State v. Coleman, ___ N.C. App. ___, ___, 655 S.E.2d 450, 453 (2008) (citation, quotation marks and ellipses omitted). However, because this was a criminal contempt proceeding and the order adjudged violated is alleged to lack sufficient clarity, we will review the order de novo. See State v. Haddock, ___ N.C. App. ___, ___, 664 S.E.2d 339, 342 (2008) (reviewing a criminal indictment de novo when the defendant alleged that the indictment lacked sufficient clarity).

III. Analysis
Defendants contend that the injunction was unenforceable because it was not set forth in specific terms as required by N.C. Gen. Stat. § 1A-1, Rule 65.[2] Specifically, defendants contend that the phrase "fully licensed" pilot is ambiguous because pilots are issued "certificates" and not "licenses" and because there are many different categories of pilot certificates.
The parties have cited no cases, and we find only one, in which this Court has discussed the meaning of "specific in terms" as found in Rule 65(d). Automobile Dealer Resources, Inc. v. Occidental Life Ins. Co. of N.C., 15 N.C. App. 634, 641, 190 S.E.2d 729, 734 (1972). The defendant in Automobile Dealer gave notice to the plaintiff that it would no longer honor its contract with the plaintiff. Id. at 637, 190 S.E.2d at 731. The plaintiff sued and the trial court enjoined the defendant from violating the contract pending trial on the merits. Id. at 638, 190 S.E.2d at 732. The defendant excepted to the preliminary injunction, inter alia, on the grounds that it was not specific in terms. Id. at 641, 190 S.E.2d at 734. In overruling the defendant's exception, this Court looked to the previous relationship between the parties and concluded that the injunction was sufficiently specific "when no showing [was] made as to any previous difficulty on the part of either party in understanding the language used." Id. Because this was a criminal contempt proceeding, we are further guided by the test for sufficient clarity in a criminal indictment, to wit, "clearly set forth so that a person of common understanding may know what is intended." State v. Coker, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984).
We first note that the record does not contain plaintiffs' Motion for Temporary Injunction. The record does contain plaintiffs' original complaint, but the complaint makes no allegations about unlicensed or inadequately licensed pilots. The only documents in the record which address the licensing, or alleged lack thereof, of the pilots are the temporary injunction, the motion for contempt, and the affidavits filed in support of and opposing the contempt motion. Unlike Automobile Dealer, we are unable to determine from the record that there was "no showing . . . as to any previous difficulty on the part of either party in understanding the language used." 15 N.C. App. at 641, 190 S.E.2d at 734. We have no record of prior communications between the parties or with the trial court regarding the issue of the licensure of pilots who use defendants' airport. Also, defendants do specifically claim difficulty in understanding the language used in the temporary injunction.
Furthermore, we have reviewed the Federal Aviation Administration ("FAA") regulations for pilot certification. See Certification: Pilots, Flight Instructors, and Ground Instructors, 14 C.F.R. pt. 61 (2007). The regulations list no fewer than six different levels of pilot certification. 14 C.F.R. § 61.5. The FAA's own website notes that "[t]here are several different types of pilot's licenses, from student pilot all the way up to airline transport pilot." FAA, Become a Pilot, http://www.faa.gov/pilots/become/ (last visited September 22, 2008) Even a student pilot certificate has differing levels of solo flight permissions, depending on the flight instructor's endorsement on the certificate. 14 C.F.R. § 61.87, § 61.93; FAA, Become a Pilot  Student Pilot's Certificate Requirements, http://www.faa.gov/pilots/become/studentcert/ (last visited September 22, 2008). A student pilot is also limited by some weather conditions, but not others. 14 C.F.R. § 61.89.
Absent a copy of plaintiff's motion for temporary injunction or any other documents in the record which could shed light on the meaning of "fully licensed" as used in the temporary injunction, and absent language in the FAA regulations clearly corresponding to the phrase "fully licensed" pilot, we conclude that the descriptive phrase "not fully licensed" lacks sufficient clarity to hold defendants in criminal contempt. Accordingly, the order holding defendants in criminal contempt must be vacated.
Vacated.
Chief Judge MARTIN and Judge BRYANT concur.
Report per Rule 30(e).
NOTES
[1] "Direct contempts that occur in the court's presence may be immediately adjudged and sanctioned summarily and, except for serious criminal contempts in which a jury trial is required, the traditional distinction between civil and criminal contempt proceedings does not pertain[.]" Int'l Union v. Bagwell, 512 U.S. 821, 827, 129 L. Ed. 2d 642, 651 n.2 (1994) (citations omitted).
[2] "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained[.]" N.C. Gen. Stat. § 1A-1, Rule 65(d) (emphasis added).